JOSEPH MILLER,

Plaintiff,

v.

DESLAURIEL-RIXMAN,

Defendant.

Case No. 23-cv-06629-NW

**ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 40

Plaintiff Joseph Miller, a state prisoner proceeding pro se, filed the instant civil rights lawsuit alleging excessive force by Defendant Deslauriel-Rixman, a correctional officer at Salinas Valley State Prison (SVSP). ECF No. 1 at 2–3. On December 9, 2024, Deslauriel-Rixman filed a motion for summary judgment. ECF No. 40. Miller filed an opposition and Deslauriel-Rixman filed a reply. ECF Nos. 48, 50. For the reasons stated below, Deslauriel-Rixman's motion is **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

This matter stems from an incident that took place on October 27, 2021. ECF No. 1 at 2. The parties' respective allegations are set forth below.

### A. Miller's Version

In his complaint, Miller alleges that on October 27, 2021, the door to his cell at SVSP C Yard "opened without warning." ECF No. 1 at 2. Miller "immediately [laid] on the floor" of his cell and "placed [his] hands behind [his] back." *Id.* at 2–3. An unspecified party placed "handcuffs and leg restraints" on Miller, while Correctional Officer Deslauriel-Rixman placed "a shield" on Miller, who "offered zero resistance." *Id.* at 3. Miller alleges that Deslauriel-Rixman unexpectedly "began beating my head under the shield numerous times with a closed fist." *Id.*

Miller "suffered black eyes, eyes swollen shut, blood gushing from left and right ears, hematoma, discolored black, blue and purple ears, and permanent 80% hearing loss in left ear." *Id.* Miller claims that this amounted to a violation of his Eighth Amendment rights. *See id.* at 2. Miller seeks monetary damages, as well as Deslauriel-Rixman's firing or placement away from prisoners. *Id.*

Miller also filed a declaration, signed under penalty of perjury, with his opposition. ECF No. 48 at 31. In the declaration, Miller alleges many of the same facts that he referenced in his complaint, including that on October 27, 2021, at around 9:00 p.m. in the evening, he was sitting in his cell when the door opened without warning. *Id.* Upon seeing officers outside his cell, Miller laid flat on his floor with his face on the floor and his hands behind his back. *Id.* Deslauriel-Rixman and another officer, Gill, entered and the incident occurred. *Id.*

Miller also alleges that his property was taken from his cell following the incident;[1] after the property was returned, Miller submitted a grievance on October 31, 2021, claiming that Deslauriel-Rixman attacked him without provocation. ECF No. 48 at 32. The next day, a nurse and guards performed an inspection of his medical injuries, noting them on a CDCR 7219 "body sheet." *Id.* Two correctional officers recorded an interview with Miller, during which they asked him to explain what happened, and performed a close-up recording of his injuries. *Id.* Miller was also interviewed by Internal Affairs. *Id.* Miller denied ever intentionally hitting his head on any wall, door, or hard surface. *Id.* at 33. He also denied ever saying he was "good" to Nurse P. Jung, who examined Miller after the alleged October 27, 2021 incident. *Id.*

Miller provided additional exhibits in his opposition to the motion for summary judgment, including a copy of his October 31, 2021 grievance alleging that he was "beat bloody by c/o's" on October 27, 2021, and that "Deslauri[el] beat me!" *See* ECF No. 48 at 19. He also attached proposed deposition questions for Nurse Jung and Deslauriel-Rixman. *Id.* at 34–36.

### B. Deslauriel-Rixman's Version

Deslauriel-Rixman alleges that he did not use force against Miller on October 27, 2021,

---

[1] The medical records provided show that Miller was placed on suicide watch on October 27, 2021, and his cell was "stripped." ECF No. 40-1 at 52.

and further alleges that Miller's injuries were the result of self-harm. ECF No. 40 at 4. In support of his allegations, Deslauriel-Rixman provides Miller's medical records, part of his central file records, and excerpts from Miller's deposition. *See generally* ECF No. 40. Deslauriel-Rixman also provides declarations from his attorney, Norma Morales, and himself. ECF Nos. 40-1, 40-2.

The medical records provided by Deslauriel-Rixman show that Miller struggled with suicidal ideation and substance use disorder in 2021, and that Miller had frequent encounters with medical staff. *See* ECF No. 40-1. On several dates before and after the alleged October 27, 2021 incident, Miller declined to be seen by medical staff for his various medical conditions. *Id.* at 5–16. As relevant, Deslauriel-Rixman provides several medical notes stating that Miller triggered an alarm when he hit his own head against his cell door on October 27, 2021; October 28, 2021; and November 6, 2021. ECF No. 40-1 at 45, 52, 10, 36. On October 27, 2021, Nurse P. Jung wrote that "[a]t around 2110, alarm was activated due to I/P banging head on cell front window. I/P was agitated, yelling, rambling hyper verbal speech." *Id.* at 52. Miller was placed on suicide watch. *Id.* Nurse Jung also noted that Miller had "[d]iscoloration and mild swelling . . . to R side of forehead and right lower eyelid region." *Id.* In a form documenting Miller's injuries, Jung wrote "'I'm good . . .'" in the section of the form labeled "brief statement in subject's words of the circumstances of the injury or unusual occurrence." *Id.* at 217. When Miller saw a nurse on October 28, 2021, or one day after the alleged incident at issue, he reportedly told the nurse, "I am fine." *Id.* at 10. Miller allegedly engaged in other self-harm on various other dates in the months following the incident at issue. *See generally* ECF No. 40-1.

Morales states in her declaration that, according to the Litigation Coordinator at the prison, "no video [exists] of such alleged incident." ECF No. 40-1 at 2.[2] In his own declaration, Deslauriel-Rixman states that he did not "beat [Miller] up for his 'disrespect' towards [Deslauriel-Rixman]" and that he never "hit, assaulted, beat[], or otherwise physically harm[] Miller in any way, for any reason." *Id.* Deslauriel-Rixman also states that he reviewed his records, and none show an incident between himself and Miller. *Id.* Finally, Deslauriel-Rixman alleges that he did

United States District Court
Northern District of California

---

[2] The Court assumes that Morales was referring to the alleged October 27, 2021 incident.

not have a "use of force report" for October 27, 2021, and that he would have prepared one and remembered the incident if he had used force on that date. *Id.*

Deslauriel-Rixman also provides excerpts from Miller's June 27, 2024 deposition. ECF No. 40-1 at 233–46. In the excerpts, Miller testified that he never mentioned the assault by Deslauriel-Rixman to any doctor or medical professional and only discussed his long-term injuries with them. *Id.* at 236. Miller was asked questions about his mental health diagnoses and medical treatment, including his substance use disorder; Miller denied recent incidents of self-harm. *Id.* at 237–40.

Finally, Deslauriel-Rixman provides records of Miller's November 2, 2021 classification chrono; he also provides a log of Miller's bed assignments between March 17, 2021 and September 10, 2022, an "Incident Report Log by Offender" with Miller's name and CDCR number, Rules Violation Reports for Miller, and a heavily redacted "3W Daily Activity Report" for October 27, 2021, with an entry stating "Code 1 C5, Medical Emergency, Medical on scene, Code 4 (Sgt. J. Vallejo)" at 9:08 p.m. *See* ECF No. 40-1 at 201–29.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Mere allegations or denials in pleadings do not defeat a moving party's allegations. *Gasaway v. Northwestern Mut.*

*Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994). The nonmoving party has the burden of identifying, with reasonable particularity, the "significant probative evidence" that precludes summary judgment. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the court's task to scour the record in search of a genuine issue of triable fact. *Id.* If the nonmoving party fails to make the requisite showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

A district court may consider only admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997), overruled on other grounds by *Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). However, "[w]hen opposing parties tell different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–83 (2007).

## III. DISCUSSION

The Eighth Amendment protects prisoners from cruel and unusual punishment and the unnecessary and wanton infliction of pain. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A prison official violates the Eighth Amendment when: (1) "the deprivation alleged [is] sufficiently serious;" and (2) the prison official possesses a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

Here, Deslauriel-Rixman argues that he is entitled to summary judgment because "Miller has failed to make any showing that [Deslauriel-Rixman] applied any force to Miller, and Miller has also failed to show that [Deslauriel-Rixman] applied any such force with a culpable state of

United States District Court
Northern District of California

mind." ECF No. 40 at 6. He also argues that "the evidence in Miller's record reflects that the events Miller alleges in his complaint did not occur, and instead, Miller committed self-harm on October 27, 2021." *Id.*

As the movant, the burden is on Deslauriel-Rixman to show that, considering the evidence in the light most favorable to Miller, no genuine issue of material fact exists and that Deslauriel-Rixman is entitled to summary judgment. *Anderson*, 477 U.S. at 247–48. As noted above, Miller alleged in his complaint that Deslauriel-Rixman held him down with a riot shield while his hands were behind his back and punched him on the side of his head and face without provocation, causing several injuries. ECF No. 1 at 2–3. He also provided a declaration with substantially similar allegations and filed a grievance claiming he was assaulted by Deslauriel-Rixman shortly after the incident. ECF No. 48 at 31–32. If Miller's testimony is found credible, a jury could reasonably find that Deslauriel-Rixman acted maliciously and used excessive force based on the circumstances of the alleged assault. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 478–79 (9th Cir. 2007) (dispute of material fact existed as to excessive force claim where officers tackled suspect without provocation); *Alexander v. City and Cnty. of Honolulu*, 545 F. Supp. 2d 1122, 1135 (D. Hawai'i Feb. 28, 2008) (issue of material fact existed as to whether officers used excessive force where they assaulted plaintiff, forced him to the ground, and arrested him without provocation). The threshold issue is therefore whether Deslauriel-Rixman has shown that Miller cannot present sufficient evidence to carry his burden at trial.

To the extent that Deslauriel-Rixman argues that Miller cannot carry his burden at trial because the evidence in the record does not support Miller's version of events, the Court notes that the evidence provided by Deslauriel-Rixman is vague, and the Court is unable to discern the extent to which it contradicts Miller's allegations. For example, Deslauriel-Rixman's declaration does not offer a specific denial of Miller's allegations or explain whether he disputes that he had any contact with Miller on October 27, 2021; whether he used a riot shield to hold Miller down on that date; or whether he was present in Miller's cell on that date. *See generally* ECF No. 40-2.[3]

_____

[3] Deslauriel-Rixman argues in his reply brief that this information is not material, ECF No. 50 at

Instead, Deslauriel-Rixman provides a general denial, stating that he never hit, assaulted, beat, or otherwise physically harmed Miller (ECF No. 40-2 at 2) and that he has no records showing any incidents or use-of-force between the pair. *Id.* In opposition, Miller has provided evidence that he reported Deslauriel-Rixman's alleged use of force shortly after the alleged incident and filed a grievance regarding the alleged assault. *See* ECF No. 48. Without more information, the Court is unclear as to the significance of Deslauriel-Rixman's own lack of records where other records documenting the alleged incident exist.

Deslauriel-Rixman also provides medical records containing statements that Miller was seen by medical staff after an alarm was activated due to Miller hitting his own head on October 27, 2021 (ECF No. 40-1 at 52). As noted, the records state that "[an] alarm was activated due to I/P banging head on cell front window." *Id.* They do not reference any alleged assault, and it is unclear from the records whether Nurse Jung, who wrote the statements at issue, saw Miller hitting his head. *Id.*; *see Pope v. Las Vegas Metropolitan Police Dep't*, 647 Fed. Appx. 817, 819 (9th Cir. 2016) (in ruling on summary judgment motion, statements in medical records with ambiguous sources properly excluded as hearsay when offered for the truth of the matter asserted). However, in his declaration, Miller denies hitting his own head on any hard surface in his cell, and he disputes statements attributed to him by Nurse Jung in his medical records. ECF No. 48 at 33. Moreover, while Miller concedes that he did not mention the alleged assault to medical staff when his injuries were treated, ECF No. 48 at 5–6, Miller provides evidence showing that shortly after the alleged incident, he filed a grievance alleging that he was "beat bloody by c/o's" on October 27, 2021, and that "Deslauri[el] beat me!" *See* ECF No. 48 at 19. Miller also alleges, and Deslauriel-Rixman does not appear to dispute, that medical and custody staff examined Miller – and documented his injuries on a CDCR 7912 "body sheet" and video recording – on November 1, 2021, in response to his complaint regarding Deslauriel-Rixman's alleged use of force. *Id.* at 32;

3, but if he was not present during the alleged incident on October 27, 2021, the Court believes that is an issue of material fact. To the extent that Deslauriel-Rixman argues in his reply brief that the daily activity logs "reflect that Sgt. Vallejo and medical staff responded to the alarm," the Court requests more information regarding the nature of the logs so the Court can better assess whether they would necessarily show Deslauriel-Rixman was not present. ECF No. 50 at 3.

7

*see id.* at 14 (7219 form dated November 1, 2021).[4]

Given that the evidence in the record is mixed, and the only declarations in the record are from each respective party, the Court may not make any credibility determinations at this stage as to whether Miller's injuries were the result of self-harm or his alleged assault. *Freeman,* 125 F.3d at 735; *see Schlup v. Delo*, 513 U.S. 298, 332 (1995) ("[A] district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented.") (quotations omitted). Moreover, the Court must make any reasonable inferences in favor of Miller; the Court cannot, without more information, determine whether the record "blatantly contradict[s]" Miller's version of events such that the Court must disregard Miller's version of events. *Scott*, 550 U.S. at 381; *see id.* (holding that district court should have disregarded plaintiff's version of events during summary judgment where his "version of events [was] so utterly discredited by the record that no reasonable jury could have believed him").

Deslauriel-Rixman has not met his burden of showing that no issues of material fact exist, or that he is entitled to summary judgment on Miller's excessive force claim. His motion for summary judgment is **DENIED**.[5] However, based on the parties' briefing, the case does not appear to be ripe for trial, and Deslauriel-Rixman may be able to show he is entitled to summary judgment if he addresses the issues of fact identified above. For example, Deslauriel-Rixman could: provide the Court with more information about his location during the October 27, 2021 incident, explain the functions of the various logs in the record, or clarify whether Nurse Jung saw Miller hit his head on October 27, 2021; similarly, Miller may be able to obtain and submit the findings of the use-of-force investigation or interrogatories of witnesses based on his proposed deposition questions. *See* Fed. R. Civ. P. 56(d)–(e). The denial is therefore **WITHOUT**

---

[4] Deslauriel-Rixman acknowledged in his briefing that there was a use-of-force investigation conducted in response to Miller's allegations against him. *See* ECF No. 50 at 4. Neither party provides more context as to the findings of the investigation or the contents of any interviews performed in connection with the investigation, which defense counsel states was not submitted with the motion for summary judgment due to the timing of when she received approval to file it. *See* ECF No. 50 at 4.

[5] Given that the parties dispute facts necessary to decide the issue of qualified immunity, the Court will defer ruling on the issue of qualified immunity. *See Blankenhorn*, 485 F.3d at 477–78.

**PREJUDICE** to Deslauriel-Rixman filing a second motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1105–06 (9th Cir. 1997).

**IV. CONCLUSION**

The Court orders as follows:

1. The motion for summary judgment (ECF No. 40) is **DENIED WITHOUT PREJUDICE.**

2. To expedite the resolution of this case, the Court sets the following briefing schedule:

a. No later than September 12, 2025, Deslauriel-Rixman must file and serve his second motion for summary judgment or other dispositive motion. If Deslauriel-Rixman believes that this case cannot be resolved by summary judgment, he must inform the Court prior to the date the motion is due. If Deslauriel-Rixman files a second motion for summary judgment, he must provide Miller with a new *Rand* notice regarding summary judgment procedures at the time he files his motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

b. Miller's opposition to the second summary judgment or other dispositive motion must be filed with the Court and served upon Deslauriel-Rixman by October 10, 2025. Miller must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

c. If Deslauriel-Rixman wishes to file a reply brief, the reply brief must be filed and served within 14 days of receiving Miller's reply.

**IT IS SO ORDERED.**

Dated: July 31, 2025

Noël Wise
United States District Judge

United States District Court
Northern District of California

9